IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TIMOTHY CAPPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 5:18-CV-133-FL |
| | ) | WESTERN DIVISION |
| MONTY HARRIS; NEWMARK SOUTHERN REGION, LLC; and DOES 1-25,[1] | ) | |
| Defendants. | ) | |
| GREGORY KATZ, | ) | |
| Plaintiff and Counter-Defendant, | ) | |
| v. | ) | No. 7:18-CV-47-FL |
| TIMOTHY CAPPS, | ) | SOUTHERN DIVISION |
| Defendant and Counter-Claimant, | ) | |
| and KACIE HOPKINS VAN HINE, | ) | |
| Defendant. | ) | |

**ORDER**

This matter is before the court on defendants' motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 2–4 ("FAA") (DE 66).[2] Also before the court is defendant

---

[1] The court constructively amends its case caption to reflect the prior dismissal of defendant Newmark & Company Real Estate, Inc., from this action.

[2] Defendant Newmark Southern Region, LLC ("Newmark"), joins defendants Gregory Katz's ("Katz") and defendant Monty Harris's ("Harris") motion. (DE 76). Unless otherwise indicated, references to docket entries ("DE") are to the docket in the lead case, No. 5:18-CV-133-FL.

Katz's and Harris's motion to strike the declaration of Pietro Deserio (DE 106), and plaintiff's motion for leave to supplement his motion to compel arbitration (DE 140).[3] The issues raised have been fully briefed, and in this posture are ripe for ruling. For the reasons that follow, defendants' motion to strike is denied, plaintiff's motion for leave to supplement is granted, and defendants' motion to compel arbitration is granted.

## STATEMENT OF THE CASE

Plaintiff Timothy Capps ("Capps")[4] is a former real estate broker that worked with defendants to represent commercial tenants. For reasons disputed by the parties, the relationship between plaintiff and defendants deteriorated, ultimately resulting in plaintiff's termination from employment with defendant Newmark. On December 22, 2017, defendant Katz filed a lawsuit in the United States District Court for the Northern District of Georgia, seeking damages and declaratory judgment that no legal partnership existed between defendant Katz and plaintiff. The case was transferred to this court on March 22, 2019. One week later, plaintiff filed several counterclaims against defendant Katz, and initiated an additional lawsuit against defendant Harris and defendant Newmark. Plaintiff seeks to recover damages, including commissions he allegedly owed to him.

Defendants Katz and Harris answered plaintiff's counterclaims and complaint respectively, while defendant Newmark filed a motion to dismiss the claims against it. Defendant Newmark also

---

[3] Several other motions unrelated to arbitration are pending, including defendants Katz and Harris's motions for partial summary judgment (DE 61, 121), plaintiff Capps's motion to seal (DE 89), motion to amend or correct the appendix to the statement of facts (DE 103), and motion for partial summary judgment (DE 116), defendant Newmark's motion for protective order (DE 136), and defendant Harris's motion to compel (DE 138). Plaintiff's motion to seal (DE 89) is granted to protect the parties' confidential business information as set forth in the court's protective order. The court does not address the remaining motions pending at this time.

[4] Where the motion to compel arbitration concerns Capps's claims, the court hereinafter refers to Capps as plaintiff, and Katz, Harris, and Newmark as defendants.

2

moved to stay discovery in the case, in part because it contended plaintiff's claims were subject to arbitration. The court entered case management order consolidating the two cases, setting a plan for discovery, and finding as moot defendant Newmark's motion to stay discovery.

On November 26, 2018, the court granted in part and denied in part defendant Newmark's motion to dismiss. The court dismissed all claims against former defendant Newmark & Company Real Estate, Inc., and all claims except breach of contract by against defendant Newmark. In pertinent part, the court concluded that plaintiff stated a claim for breach of contract regarding defendant Newmark withholding commissions. Thereafter, defendant Newmark counterclaimed against plaintiff for breach of a promissory note.

Over two months before the dispositive motion deadline in effect at the time, defendants Katz and Harris filed their first motion for partial summary judgment on February 21, 2019. The motion requested that the court grant defendant Katz's claim for declaratory relief, and dismiss all claims by plaintiff premised upon the existence of a legal partnership.

On March 4, 2019, defendants Katz and Harris filed the instant motion to compel arbitration. Defendant Newmark joined the motion ten days later. In support of the motion, defendants rely upon plaintiff's deposition testimony and exhibits discussed therein ("Capps Dep." (DE 67-1, 77-1)), plaintiff's service agreement with defendant Newmark ("Service Agreement" (DE 25-1)), the Newmark Grubb Knight Frank Broker Handbook ("Handbook" (DE 34-4)), plaintiff's responses to defendant Newmark's requests for production of documents ("Requests for Production" (DE 67-2)), and a letter from plaintiff's counsel refusing to engage in arbitration ("Letter" (DE 67-3)).

Plaintiff responded in opposition to defendants' motion to compel arbitration on April 5, 2019, relying upon several pieces of email correspondence among plaintiff and different employees

3

of defendant Newmark ("Email Correspondence" (DE 91-1–91-5, 91-7–91-12), deposition testimony from defendant Harris's ("Harris Dep." (DE 91-6)) and Luis Alvarado ("Alvarado Dep." (DE 140-1)),[5] and plaintiff's initial disclosures (DE 91-13). Defendants Katz and Harris replied, relying upon email correspondence from plaintiff invoking arbitration ("Email Correspondence" (DE 105-1, 105-3)), plaintiff's arbitration position statement ("Position Statement" (DE 105-2)), and defendant Katz's deposition ("Katz Dep." (DE 105-4)).

Defendants Katz and Harris also filed the instant motion to strike plaintiff's declaration and accompanying email correspondence. Defendants argue that the email correspondence should not be considered by the court because it is not properly authenticated under the Federal Rules of Evidence. Plaintiff opposes the motion, asserting that attorneys may authenticate documents that the opposing party produces in discovery, or where the opposing parties do not challenge the authenticity of the documents.

In the meantime, plaintiff filed motion for partial summary judgment on defendant Katz's claims.[6] Defendants Katz and Harris filed a second motion for partial summary judgment, seeking dismissal of the remainder of plaintiff's claims. Where discovery remained ongoing, defendant Newmark was granted an extension of the dispositive motions deadline, and the parties agreed to allow supplemental briefing on the pending motions for summary judgment.

---

[5] Where Alvarado's deposition testimony was not available at the time plaintiff filed his response in opposition, plaintiff's motion for leave to supplement (DE 140) is GRANTED.

[6] Kacie Hopkins Van Hine ("Van Hine"), defendant in the first lawsuit initiated by Katz, also joins the motion for partial summary judgment.

## STATEMENT OF UNDISPUTED FACTS

The undisputed facts may be summarized as follows. Plaintiff, as a key employee of TMC General Brokerage, LLC ("TMC"), entered into Service Agreement with defendant Newmark and TMC. (Service Agreement (DE 25-1)). As part of the Service Agreement, plaintiff's company agreed "to execute concurrently herewith and abide by the Dispute Resolution Agreement, which is incorporated as part of this Agreement." (Service Agreement (DE 25-1) ¶ 2). Plaintiff executed the Dispute Resolution Agreement, which provides in the pertinent part "if your business maintains an internal dispute resolution policy or process governing certain disputes (for example, internal resolution of disputes regarding the allocation of commissions among team members), then that internal dispute resolution policy will govern adjudication of disputes covered by that policy." (Capps Dep. (DE 67-1, 77-1) 305:15-22; Dispute Resolution Agreement (DE 67-1) at 8, 10).

Plaintiff also signed an acknowledgment of receipt of the Handbook, which represents defendant Newmark's "general policies, procedures, and guidelines." (Capps Dep. (DE 67-1) 301:10-23; Acknowledgment (DE 67-1) at 7). The acknowledgment further provides that "all claims and disputes arising from or related to my employment or services with the Company . . . are subject to the dispute resolution processes set forth in the Company's Dispute Resolution Policy and Agreement." (Capps Dep. (DE 67-1) 301:10-23; Acknowledgment (DE 67-1) at 7). Section 15 of the Handbook specifically prescribes procedures for internal arbitration of commission disputes. (See Handbook (DE 34-4) at 16-17). Section 18 of the Handbook requires that commission disputes arising from transactions closed following a broker's termination also be submitted to arbitration under section 15. (Handbook (DE 34-4) at 18).

In the fallout between plaintiff and defendants Katz and Harris, plaintiff attempted to invoke his right to arbitrate commission disputes. (See Email Correspondence (DE 91-2) at 8). According to plaintiff, defendant Newmark denied plaintiff access to counsel, refused to submit his claims to arbitration on the basis that such claims were untimely in the face of explanation by plaintiff, did not disqualify an impartial arbitrator, and prevented plaintiff from obtaining information necessary to arbitrate commission disputes. (See Alvarado Deposition (DE 140-1) 77:10-78:24, 108:23-109:14, 125:5-127:15, 132:15-134:20, 139:4-177:9; Harris Dep. (DE 91-6) 172:13-174:23, 180:3-12; Email Correspondence (DE 91-3) at 2-6; Email Correspondence (DE 91-4) at 1-3; Email Correspondence (DE 91-7) at 2-4). Following initiation of this litigation, plaintiff refused to engage in arbitration, despite defendants' insistence that he do so. (See Email Correspondence (DE 91-11) at 2-3).

**DISCUSSION**

A.   Motion to Strike (DE 106)

"Rule 901 of the Federal Rules of Evidence requires that a proponent of evidence produce sufficient evidence to support a finding that the evidence is what the proponent claims it to be before it may be admitted into evidence." Six v. Generations Fed. Credit Union, 891 F.3d 508, 512 n.2 (4th Cir. 2018). The Local Civil Rules also allow counsel to submit affidavits. Specifically, counsel may swear to known facts or facts upon information and belief that "relate solely to an uncontested matter" or "the facts relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the facts." See Local Civil Rule 7.1(i)(1), (2).

Although the United States Court of Appeals for the Fourth Circuit has not addressed the issue, district courts in this circuit have held "[a]n attorney is an appropriate source to authenticate

6

documents received in discovery." Shell Trademark Mgmt. BV & Motiva Enterprises, LLC v. Ray Thomas Petroleum Co., 642 F. Supp. 2d 493, 510 (W.D.N.C. 2009); Deakins v. Pack, 957 F. Supp. 2d 703, 754 (S.D.W. Va. 2013) (citing Hess v. Multnomah County, 211 F.R.D. 403, 406 (D. Or. 2001)); see Fin. Co. of Am. v. BankAmerica Corp., 493 F. Supp. 895, 900–01 (D. Md. 1980). Defendants do not contest dispute that nine of the eleven contested exhibits were received by plaintiff in discovery from defendant Newmark. (See Deserio Decl. (DE 91) ¶¶ 2-6, 8-11). The court joins its sister districts and concludes that, in this circumstance, counsel properly authenticated such exhibits since they were received through discovery.

Turning to the remaining two exhibits, a failure by a party to challenge a document's authenticity, combined with an attorney's affidavit, is also sufficient to authenticate the documents attached to the declaration. See Maljack Prods., Inc. v. GoodTimes Home Video Corp., 81 F.3d 881, 889 n.12 (9th Cir. 1996); Snyder v. Whittaker Corp., 839 F.2d 1085, 1089 (5th Cir. 1988); Fin. Co. of Am., 493 F. Supp. at 900–01. Defendants Katz and Harris do not challenge the authenticity of the remaining two disputed exhibits, and counsel asserts by sworn statement that the documents are authentic. This is sufficient evidence of authenticity to admit the remaining emails. Defendants' motion to strike is denied.

B.  Motion to Compel Arbitration (DE 66)

   1.  Standard of Review

The standard of review for a motion to compel arbitration pursuant to the FAA is akin to the standard of review of a motion for summary judgment. See Chorley Enters. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 564 (4th Cir. 2015). Therefore, such motions should be granted where an examination of the pleadings, affidavits, and other discovery materials properly before the court

demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party). Where a genuine dispute as to one or more material facts exists, however, the FAA requires a jury trial. Chorley, 807 F.3d at 564.

The party seeking to compel arbitration "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250. In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Nevertheless, "permissible inference must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "a reasonable jury could reach only one conclusion based on the evidence," or when "the verdict in favor of the non-moving party would necessarily be based on speculation and

conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created," and judgment as a matter of law must be denied. Id. at 489–90.

    2.    Analysis

Section 2 of the FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 of the FAA provides that "upon any issues referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, shall on application of one of the parties the court shall stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . ." 9 U.S.C. § 3. Section 4 of the FAA allows a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration . . . [to] petition any United States district court which, save for such agreement, would have jurisdiction . . . for an order [compelling arbitration as provided for in the agreement]." 9 U.S.C. § 4. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983).

        a.    Arbitrability

When faced with a motion to compel arbitration, the court analyzes only two gateway issues. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83–84 (2006). First, the court must

9

determine whether "a valid agreement to arbitrate exists between the parties." Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999). This inquiry is not confined to defects in contract formation, but includes also "such grounds as exist at law or in equity for the revocation of any contract." Id. (quoting 9 U.S.C. § 2). Where the court concludes there is a contract, the court next asks whether "the specific dispute falls within the substantive scope of that agreement." Id.

An agreement to arbitrate any dispute "arising out of or related to" an underlying agreement constitutes a broad arbitration agreement to be given "expansive reach." American Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 93 (4th Cir. 1996). Such language "does not limit arbitration to the literal interpretation or performance of the contract, but embraces every dispute between the parties having a significant relationship to the contract regardless of the label added to the dispute." Id. (quoting J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 321 (4th Cir. 1988) (alterations omitted)).

Plaintiff's Service Agreement contemplates that he and his company would be bound by the Dispute Resolution Agreement, which was incorporated into the Service Agreement by reference. (Service Agreement (DE 25-1) ¶ 2). Plaintiff executed the Dispute Resolution Agreement, which provides in the pertinent part "if your business maintains an internal dispute resolution policy or process governing certain disputes . . . , then that internal dispute resolution policy will govern adjudication of disputes covered by that policy." (Capps Dep. (DE 67-1, 77-1) 305:15-22; Dispute Resolution Agreement (DE 67-1) at 8, 10). Plaintiff signed an acknowledgment of receipt of the Handbook, which represents defendant Newmark's "general policies, procedures, and guidelines." (Capps Dep. (DE 67-1) 301:10-23; Acknowledgment (DE 67-1) at 7). Section 15 of the Handbook

specifically provides for internal arbitration. (See Handbook (DE 34-4) at 16-17). Therefore, the court concludes there is a valid agreement to arbitrate.

In addition, plaintiff's commission disputes fall within the scope of the arbitration agreement. Section 15 of the Handbook specifically contemplates internal arbitration "[i]n the event there is a dispute involving Brokers relating to the sharing of a Commission . . . ." (Handbook (DE 34-4) at 16, 18-19). Section 18 of the Handbook requires that commission disputes arising from transactions closed following a broker's termination also be submitted to arbitration. (Handbook (DE 34-4) at 18). The Dispute Resolution Agreement signed by plaintiff noted that "internal resolution of disputes regarding the allocation of commissions among team members" as an example of an issue subject to company internal dispute resolution policy, which in this case is arbitration. (See Capps Dep. (DE 67-1, 77-1) 305:15-22; Dispute Resolution Agreement (DE 67-1) at 8, 10). Plaintiff acknowledged that his commission disputes "should have been" arbitrated "per this agreement." (Capps Dep. (DE 67-1) 312:15-16).

Plaintiff argues that defendant Newmark has deprived him of a fair arbitration process by failing to provide him with necessary information to initiate arbitration, denying him counsel, and refusing to disqualify an arbitrator plaintiff contends was biased. (See, e.g., Alvarado Deposition (DE 140-1) 77:10-78:24, 108:23-109:14, 125:5-127:15, 132:15-134:20, 139:4-177:9; Harris Dep. (DE 91-6) 172:13-174:23, 180:3-12). These allegations are certainly serious, and even the permissive provisions of the Federal Arbitration Act do not allow use of an internal dispute resolution process as a kangaroo court. See 9 U.S.C. § 10 (providing the grounds for vacating an arbitration award). Nonetheless, plaintiff's arguments do not invalidate his agreement to arbitrate, where as here defendants insist on engaging in arbitration. See Hooters, 173 F.3d at 941

11

("Generally, objections to the nature of arbitral proceedings are for the arbitrator to decide in the first instance.").

Plaintiff's commission disputes fall within the scope of his agreement to arbitrate.

　　b.　　Default

Plaintiff asserts that, even if his commission claims are otherwise arbitrable, defendants defaulted on their right to arbitrate commission disputes. (See Pl. Resp. (DE 92) at 13-20). "Under the FAA, a party may lose its right to compel arbitration if it 'is in default in proceeding with such arbitration.'" Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d 690, 702 (4th Cir. 2012) (quoting 9 U.S.C. § 3). The party opposing arbitration bears the "heavy burden" of showing default. Am. Recovery Corp., 96 F.3d at 95. "Default in this context resembles waiver, but, due to the strong federal policy favoring arbitration, courts have limited the circumstances that can result in statutory default." Forrester v. Penn Lyon Homes, Inc., 553 F.3d 340, 342–43 (4th Cir. 2009) (citing Maxum Founds., Inc. v. Salus Corp., 779 F.2d 974, 981 (4th Cir.1985)). "We are unwilling to include activity that the moving party did not initiate in assessing that party's default." Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc., 380 F.3d 200, 206 (4th Cir. 2004).

"A party is in default only if it has 'so substantially utiliz[ed] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay.'" Dillon v. BMO Harris Bank, N.A., 787 F.3d 707, 713 (4th Cir. 2015) (quoting Maxum Founds., 779 F.2d at 981). "[E]ven in cases where the party seeking arbitration has invoked the 'litigation machinery' to some degree, 'the dispositive question is whether the party objecting to arbitration has suffered actual prejudice.'" Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc., 683 F.3d 577, 586–87 (4th Cir. 2012) (quoting MicroStrategy, Inc. v. Lauricia, 268 F.3d 244, 249 (4th Cir. 2001)).

12

"Two factors specifically inform our inquiry into actual prejudice: (1) the amount of the delay; and (2) the extent of the moving party's trial-oriented activity." Degidio v. Crazy Horse Saloon & Rest. Inc, 880 F.3d 135, 140–41 (4th Cir. 2018) (quoting Stedor Enters., Ltd. v. Armtex, Inc., 947 F.2d 727, 730 (4th Cir. 1991)).

"[M]ere delay, without more, will not suffice to constitute waiver." Maxum Founds., 779 F.2d at 982. The Fourth Circuit has consistently found delays of several months insufficient to prove default. See Wheeling Hosp., 683 F.3d at 583, 587 (six months); Patten Grading & Paving, 380 F.3d at 204–05 (four months); MicroStrategy, 268 F.3d at 250 (six months); Maxum Foundations, 779 F.2d at 982 (three months). On the other hand, the Fourth Circuit has found delays well in excess of a year to be indicative of actual prejudice. See Degidio, 880 F.3d at 141 (three years); Forrester, 553 F.3d at 343 (two years); Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc., 817 F.2d 250, 252 (4th Cir. 1987) (four years).

In the instant case, plaintiff did not file his commission claims against defendants until March 29, 2018. (See Counterclaim (DE 23), No. 7:18-CV-47-FL; Compl. (DE 1), No. 5:18-CV-133-FL). Plaintiff's claims make clear that he seeks in part to recover commissions arising from his disputes with defendants Katz and Harris. (Counterclaim (DE 23), No. 7:18-CV-47-FL, ¶¶ 93–94, 101–02, 108–09, 126, 140; Compl. (DE 1), No. 5:18-CV-133-FL, ¶¶ 100, 102, 107–08, 115–16, 122–23, 139, 163). Therefore defendants should have known upon service of the pleadings that the claims were arbitrable. See Patten Grading & Paving, 380 F.3d at 204–05. The instant motion to compel arbitration was filed March 4, 2019. (Mot. To Compel (DE 66)). In light of the command from the United States Supreme Court to resolve doubts regarding allegations of delay or other like

defenses in favor of arbitration, the court considers defendants' delay of slightly less than one year not indicative of actual prejudice. Moses H. Cone Mem'l Hosp., 460 U.S. at 24–25.

The court next considers the extent of defendants' trial oriented activity. One indicator of trial oriented activity inconsistent with intent to arbitrate is a moving party's efforts to obtain a ruling on the merits regarding arbitrable claims. Degidio, 880 F.3d at 140; Forrester, 553 F.3d at 343. However, the filing of a dispositive motion is not inherently prejudicial. Wheeling Hosp., 683 F.3d at 590; Fraser, 817 F.2d at 252. In Degidio, the court found actual prejudice where defendant "filed multiple motions for summary judgment, served discovery, and twice asked the district court to certify questions of state law to the South Carolina Supreme Court." Degidio, 880 F.3d at 140. In Forrester, the Fourth Circuit found defendant defaulted on the right to arbitrate a dispute where plaintiff was forced "to expend significant time and money responding to [defendant's] motions and preparing for trial, [and where the court] permitted [defendant] to defeat several of the Forresters' claims on summary judgment, and forced the Forresters to reveal their trial strategy." Forrester, 553 F.3d at 343.

Defendants' potentially dispositive filings are modest compared to Degidio and Forrester. The court notes at the outset that a date for trial has not been set, and the court has not ruled on the motions for summary judgment pending in this case. Moreover, at the time defendants Katz and Harris filed their motion to compel arbitration, they had only filed one motion for partial summary judgment that plaintiff had not yet responded to. (Motion (DE 61)). That motion did not address plaintiff's commission disputes, which defendants Katz and Harris now seek to arbitrate. (See Motion (DE 61); Def. Mem. (DE 62) at 17). Defendant Newmark, who later joined defendants Katz

and Harris, filed a motion to dismiss in lieu of an answer at the beginning of this case, and has not filed a motion for summary judgment. (Motion (DE 25)).

While the court did dismiss a number of plaintiff's claims against defendant Newmark on the merits, (see Order (DE 54)), the motion was made early on in the pleading stage of this case after defendant Newmark had already put plaintiff on notice of the potential arbitrability of his claims. See Fraser, 817 F.2d at 252; (Motion (DE 33) ¶ 6). Moreover, defendants Katz and Harris, who are brokers entitled to resolve commission disputes with plaintiff through internal arbitration, did not participate in defendant Newmark's motion to dismiss. See Patten Grading & Paving, 380 F.3d at 206. Finally, rather than asking for briefing to be stayed on defendants' potentially dispositive motions pending the court's decision on the instant motion, plaintiff asked for an extension of time and responded defendant Katz's and defendant Harris's motion. Therefore, plaintiff has not shown that defendants' potentially dispositive filings actually prejudiced him. See Wheeling Hosp., 683 F.3d at 590; Fraser, 817 F.2d at 252.

Plaintiff also claims that, by engaging in discovery, defendants have defaulted on their right to arbitrate. Where a moving party files their motion to compel arbitration during the discovery phase of a case, "[t]he mere participation in discovery is not sufficient to indicate default." Rota-McLarty, 700 F.3d at 704 (citing Maxum Foundations, 779 F.2d at 982). A party may default on its right to arbitrate where it "availed itself of discovery procedures unavailable in arbitration, or gained a strategic advantage through its discovery requests." Patten Grading & Paving, 380 F.3d at 207; see MicroStrategy, 268 F.3d at 251; Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc., 817 F.2d 250, 252 (4th Cir. 1987) (finding default where the nonmoving party was required to make, argue, or defend against at least eight discovery motions). The discovery also must have "prejudiced

15

[plaintiff's] ability to arbitrate [his] . . . claims." MicroStrategy, 268 F.3d at 254; Maxum Foundations, 779 F.2d at 982 (finding no prejudice where plaintiff did not dispute that the availability of discovery would aid, rather than impede, its claims in arbitration.").

The court notes the posture of this case is unusual, where arbitration was sought later in the discovery period following transfer and consolidation of cases in this district. Moreover, plaintiff argues defendants have availed themselves of discovery procedures not available in arbitration, such as subpoenaing third party witnesses, and retaining outside experts for testimony. (See Handbook (DE 34-4) at 16). However, plaintiff has failed to show actual prejudice. Plaintiff baldly asserts that discovery has prejudiced him by requiring him to incur significant costs. (Pl. Resp. (DE 92) at 23). Plaintiff does not provide any evidence showing what his costs are, he does not identify whether the discovery costs are associated with arbitrable or nonarbitrable issues, and he does not explain how those costs are attributable to defendants' discovery activities, rather than his own actions in this case. See Rota-McLarty, 700 F.3d at 704; Patten Grading & Paving, 380 F.3d at 206. Moreover, plaintiff does not establish that the material produced in discovery somehow compromised his ability to arbitrate or otherwise explain in detail how plaintiff revealed his trial strategy, thereby giving defendants a strategic advantage. See id. If anything, the court can only assume that discovery in this case has actually helped plaintiff more effectively prepare for arbitration by obtaining information previously unavailable to him. (See Email Correspondence (DE 91-1) at 2-4). As such, plaintiff fails to carry his "heavy burden" of showing defendants' trial oriented activity actually prejudiced him. Am. Recovery Corp., 96 F.3d at 95.

Plaintiff argues that defendant Katz only moves to compel arbitration of plaintiff's claims, and does not seek to compel arbitration of defendant Katz's own claims regarding the presence or

16

absence of a legal partnership. (Pl. Resp. (DE 92) at 9, 20-21). "The plain words of the [FAA] . . . suggest that arbitrability is to be determined on an issue-by-issue basis." Summer Rain v. Donning Co./Publishers, Inc., 964 F.2d 1455, 1461 (4th Cir.1992). Plaintiff's remedy to cure the alleged prejudice of "cherry-picking" his claims for arbitration is to move to compel arbitration of all claims so arbitrable under the Dispute Resolution Agreement, and demonstrate that defendant Katz must arbitrate. Since no party has moved to compel arbitration of defendant Katz's claims, including plaintiff, the court will not infer prejudice to plaintiff.

In sum, plaintiff's commission disputes are subject to arbitration. Though some litigation activity has occurred, plaintiff has failed to show default by defendants in this case. All proceedings in these consolidated cases are stayed pending resolution of arbitrable disputes. See United States v. Bankers Ins. Co., 245 F.3d 315, 319 (4th Cir. 2001); Am. Recovery Corp., 96 F.3d at 97 ("[T]he decision to stay the litigation of non-arbitrable claims or issues is a matter largely within the district court's discretion to control its docket."). The court terminates all motions pending on the docket, without prejudice to refiling those motions following arbitration.

**CONCLUSION**

For the foregoing reasons, defendants' motion to stay proceedings and compel arbitration (DE 66) is GRANTED, plaintiff's motion to seal (DE 89) is GRANTED, defendants Katz's and Harris's motion to strike (DE 106) is DENIED, and plaintiff's motion for leave to supplement response in opposition (DE 140) is GRANTED.

The parties are DIRECTED to arbitrate plaintiff's claims for commissions owed to him. These consolidated cases are STAYED pending resolution of arbitration. The parties are DIRECTED to file a joint status report within **180 days** of the date of this order, and every 180 days

17

thereafter until arbitration is completed, providing a summary of the status of arbitration proceedings. Where the case is stayed pending completion of arbitration, the clerk is DIRECTED to terminate all motions pending on the docket. The parties will be permitted to refile their motions following arbitration.

SO ORDERED, this the 6th day of June, 2019.

                                                   LOUISE W. FLANAGAN
                                                  United States District Judge