IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CV-133-FL

| TIMOTHY CAPPS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| NEWMARK SOUTHERN REGION, LLC, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motions for attorneys' fees (DE 250).[1] The time for response has expired, with no response filed. In this posture, the issues raised are ripe for ruling. For the following reasons, the motion is granted in part on the terms set forth herein.

**STATEMENT OF THE CASE**

The court summarizes the procedural history of this case as pertinent to the instant motions. Plaintiff initiated the instant lawsuit on March 29, 2018, against defendant, asserting a claim for breach of contract premised upon the terms of an independent contractor agreement between the parties (as amended in December 2015, the "Broker Agreement"). Plaintiff also asserted claims for aiding and abetting breach of fiduciary duty, tortious interference with prospective business relationships, tortious interference with contractual relations, defamation, conspiracy, breach of the implied covenant of good faith and fair dealing, and unfair and deceptive trade practices.

---

[1] Where the clerk has entered an order (DE 262) granting in part defendant's motion for bill of costs (DE 253), which is identical to that part of the instant motion seeking costs, (DE 250), the court DENIES IN PART as moot that part of the instant motion seeking costs.

On November 26, 2018, the court dismissed all of plaintiff's claims against defendant except for breach of contract, for failure to state a claim upon which relief can be granted. See Capps v. Harris, No. 5:18-CV-133-FL, 2018 WL 6172517, at *15 (E.D.N.C. Nov. 26, 2018). Following the court's dismissal order, defendant filed a counterclaim against plaintiff for breach of a Cash Advance Distribution Agreement and Promissory Note with BGC Notes, LLC (the "Promissory Note"). A period of discovery followed.

In 2019, the court compelled arbitration in part and dismissed in remaining part claims asserted between and among defendant, plaintiff, and his former colleagues, Gregory Katz ("Katz"), Monty Harris ("Harris"), and Kacie Van Hine ("Van Hine"), some of which had been subject of a separate lawsuit, No. 7:18-CV-47-FL, consolidated into the instant case. In particular, on June 6, 2019, the court compelled arbitration of all of plaintiff's "commission disputes" with defendant, Katz, and Harris, comprising all claims about the sharing and division of commissions between them. Capps v. Harris, No. 5:18-CV-133-FL, 2019 WL 2404547, at *5-6 (E.D.N.C. June 6, 2019). Then, on September 12, 2019, the court dismissed with prejudice all claims between Katz, Harris, plaintiff, and Van Hine, based upon those litigants' stipulation of dismissal, leaving for bench trial only plaintiff's claim for breach of contract against defendant and defendant's counterclaim on the Promissory Note.

On May 1, 2020, the court allowed plaintiff to amend his complaint to assert a claim of breach of implied duty of good faith and fair dealing. (May 1, 2020, Order (DE 177) at 15 & n. 6). The court set trial to commence September 29, 2020. Prior to trial, on defendant's motion, the court excluded testimony of Dr. David Gulley, plaintiff's proposed expert on calculation of damages, on May 22, 2020. Capps v. Newmark S. Region, LLC, No. 5:18-CV-133-FL, 2020 WL 2615753, at *8 (E.D.N.C. May 22, 2020). On August 27, 2020, the court denied without prejudice

2

motions in limine filed by the parties, where issues of law raised therein were not evidentiary questions susceptible to address prior to commencement of trial.

The court held bench trial for four days between September 29, 2020, and October 2, 2020. The parties filed post-trial briefs and proposed findings of fact and conclusions of law on November 16, 2020. In his post-trial brief, plaintiff sought damages including in excess of $12,796,999.00, plus attorneys' and costs under the terms of the Brokerage Agreement, as well as forgiveness of the Promissory Note.

On December 22, 2020, the court entered findings of fact and conclusions of law, and entered judgment in favor of defendant on plaintiff's claims for breach of contract and breach of implied covenant of good faith and fair dealing. The court also entered judgment in favor of defendant on its counterclaim for breach of contract, ordering that defendant shall recover from plaintiff $767,085.88, subject to setoff by defendant of $375,521.00 in withheld commissions due to plaintiff.

Defendant filed the instant motion on January 12, 2021, relying upon a declaration of David A. Paul ("Paul"), assistant general counsel of defendant, which attaches billing records and available invoices for attorneys' fees paid by and on behalf of defendant in defense of this action.[2]

On February 19, 2021, plaintiff filed a notice of appeal of the court's judgment.

## COURT'S DISCUSSION

Defendant seeks $272,858.29 in attorneys' fees on the basis of section 15 of the Broker Agreement.

---

[2] As noted previously, defendant also sought costs as part of the instant motion, relying upon additional exhibits to the Paul declaration itemizing costs. Where defendant filed a separate motion for bill of costs, which was referred to the clerk and ruled upon by the clerk, the court does not address further herein that part of the instant motion seeking costs.

"[I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 260 n. 31 (1975). Under North Carolina law, a choice of law clause in a contract is presumed to be valid. Perkins v. CCH Computax, Inc., 333 N.C. 140, 141, 146 (1992). Here, where the Broker Agreement states it is to be construed according to New York law, (Broker Agreement ¶ 14(e)), the court applies New York law in determining applicability of the attorneys' fees provision in the Broker Agreement.

"Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008). "[W]hen a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended . . . so long as those amounts are not unreasonable." F.H. Krear & Co. v. Nineteen Named Trs., 810 F.2d 1250, 1263 (2d Cir. 1987).

Here the Brokerage Agreement provides that plaintiff and defendant "hereby promise that whichever is the non-prevailing party (as provided herein) will pay the prevailing party (as provided herein) in a dispute under this Agreement, its costs, including reasonable attorneys' fees." (DE 218-1 at 5). This contract language is sufficiently clear that the non-prevailing party in this action shall pay the prevailing party reasonable attorneys' fees. Given the court's judgment in favor of defendant on all of plaintiff's claims, as well as in favor of defendant on its counterclaim, defendant is the prevailing party in this action. Accordingly, it remains for the court to determine the amount of reasonable attorneys' fees.

A district court "has broad discretion" in awarding "attorneys' fees under a valid contractual authorization." U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 74 (2d Cir. 2004). "In determining whether a requested fee is justified by the time and labor expended, the New York courts make their own assessments of the reasonableness of the amount of time spent on the case." Krear, 810 F.2d at 1265. "In general, the court uses a 'lodestar' method, in which the hours reasonably spent by counsel, as determined by the Court, are multiplied by the reasonable hourly rate." Id. at 1263 (quotations omitted). "A variety of factors informs the court's determination of whether a requested amount of attorneys' fees is reasonable or unreasonable, including the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability and reputation; the customary fee charged by the Bar for similar services; and the amount involved." Id. (quotations omitted).

"The burden is on counsel to keep and present records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required." Id. at 1265. In addition, "the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 896 n. 11 (1984); see, e.g., Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997) (looking to whether "rates are in line with the rates that have been recently awarded in the" district of litigation) (citing Blum 465 U.S. at 896); Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (stating "[w]hile . . . it may have been desirable for the district court to have been provided with affidavits from other practicing, similarly situated attorneys, such information was not indispensable" and noting "the district court cited a number of cases in this Circuit which supported the per hour rates it

approved"); see also Perdue . Kenny A. ex rel Winn, 559 U.S. 542, 555 (2010) (requiring "specific proof linking the attorney's ability to a prevailing market rate" if an adjustment in hourly rate based upon an attorney's ability is applied).

The court turns first to consider the number of hours spent by counsel. Here, the amount of time billed and the nature of the work billed is evidenced through the "billing records and available invoices for attorneys' fees incurred by Ellis & Winters LLP and paid by and on behalf of Newmark in defense of this action." (Paul Decl. (DE 252) ¶ 4). These invoices provide a detailed itemized description of services rendered by outside counsel for defendant, by date and by number of hours worked per attorney. The described services provided include a wide range of legal work throughout the course of the instant action, such as: preparing and reviewing memoranda for defendant's in house counsel; preparing and reviewing court documents and filings; participating in conferences and interviews; brief writing and research; preparing for trial; engaging in discovery; and preparing and reviewing correspondence between the parties. (See DE 252-8). The number of hours billed, per attorney and paralegal, as evidenced by the invoices in the record, is summarized in the table below:

|  | Hours | Rate | Total |
|---|---|---|---|
| Jonathan D. Sasser (Partner) | 409.2 | $556 | $227,515.20 |
| Thomas H. Segars (Partner) | 21.7 | $288 | $6,249.60 |
| Cameron T. Kirby (Associate) | 30.6 | $220 | $6,732.00 |
| Cameron T. Kirby (Associate) | 15.3 | $275 | $4,207.5 |
| Taylor H. Crabtree (Associate) | 47.4 | $220 | $10,428 |

|  | Hours | Rate | Total |
|---|---|---|---|
| Sarah H. Kaufman (Paralegal) | 40.3 | $130 | $5,239.00 |
| Melany D. McFall (Paralegal) | .2 | $130 | $26.00 |
| Professional expenses: (Westlaw, Delivery, Exhibits, Travel) |  |  | $1643.86 |
| **Total** | **564.7** |  | **$262,041.16**[3] |

Based on the court's familiarity with the record and review of these billing records, the both the type of services rendered, and the amount of time billed, totaling **564.7 hours**, is appropriate and commensurate with the complexity and depth of factual and legal issues presented in this case. In making this determination, the court takes into account that defendant appeared in court filings and at trial also through in-house counsel for defendant. Services provided by outside counsel, as evidenced through the instant billing records, demonstrate an efficient use of legal resources without apparent duplication or unnecessary use of time. Accordingly, the court finds the number of hours billed reasonable.

The court turns next to the asserted hourly rates. On this issue, defendant has not met its burden of justifying as reasonable the asserted rates of its attorneys and paralegals. In particular, the instant billing records use the following hourly rates: partner Jonathan D. Sasser ("Sasser") at

---

[3] The total amount billed, which the court has calculated in the table above, is within $150.00 of the sum of all the invoices attached as Exhibit G to the Paul Declaration, which sum is $262,157.00. (DE 252-8). The court attributes this minimal difference to rounding or minor arithmetic error. The total amount billed the court has calculated in the table above is materially less than the total of $272,858.29 in attorneys' fees requested in the instant motion. (See DE 251 at 1). Where defendant does not provide any itemized statements other than its invoices, the court adopts the total amount billed as set forth in the table above as an accurate representation of the invoices in the record, rather than the higher amount set forth in defendant's brief.

$556 per hour, partner Thomas H. Segars ("Segars") at $288 per hour, associate Cameron T. Kirby ("Kirby") at $275 or $220 per hour, associate Taylor H. Crabtree ("Crabtree") at $220 per hour, paralegals Sarah H. Kaufman ("Kaufman") and Melany D. McFall ("McFall") at $130 per hour. Defendant does not, however, present any evidence, other than the billing records themselves, providing a basis for these hourly rates. Rather, defendant argues in its brief that Sasser is "a veteran litigator and trial attorney with forty years of experience," and it states that his rate "is in line with rates charged by attorneys with comparable experience in this district and for similar legal services, particularly in complex cases like this." (Def's Mem. (DE 251) at 6). Finally, it states "[t]he rates charged by Mr. Sasser's colleague [sic] are similarly fair and reasonable." (Id.).

Critically, as noted above, it is defendant's burden to "produce satisfactory evidence" that the attorney's claimed rates are in line with market rates for this district. Blum, 465 U.S. at 896 n. 11; see Perdue, 559 U.S. at 555; Cruz, 34 F.3d at 1160; Luciano, 109 F.3d at 115. Defendant has not met this burden for the claimed hourly rates, particularly for the level of rates for Sasser, Kirby, and Crabtree. Defendant has provided no evidence by way of affidavit as to the basis for their hourly rates, nor their credentials or experience, nor the market rate in this district for attorneys of their experience. While defendant attempts to provide description in its brief, this is merely argument, not evidence. And, the Paul declaration provides no information about these attorneys' credentials or hourly rates.

This lack of evidence by way of affidavit is not fatal to defendant's fee request, but it does limit the types of information upon which the court can rely in determining the reasonableness of the hourly rates of the attorneys. See Cruz, 34 F.3d at 1160; Luciano, 109 F.3d at 115. At this point, the court must rely upon the limited information provided in the billing records themselves and its own survey of prior cases in this district awarding attorneys' fees. See id.

Here, the billing records themselves do not provide information about the experience or abilities of counsel. The court notes, however, that Sasser, who is a partner, bills at $556 per hour, while Segars, who is also a partner, bills at $288 per hour. Kirby, who is an associate, billed for two months in the middle of the litigation period at $275 per hour, which is close to the billing rate for Segars, but for the remainder of the litigation period he billed at $220 per hour, the same as Crabtree. These discrepancies are not explained in the billing records. Nonetheless, the court accepts the billing records as some evidence of the range of market rates based upon what counsel actually charged defendant for professional services.

Next, the court considers recent prior cases in this district involving an award of attorney's fees, which may be summarized as follows: Grimes v. Bruson Grp., Inc., No. 5:19-CV-387-BO, 2021 WL 1700349, at *2 (E.D.N.C. Apr. 29, 2021) ("[D]efendants concede that **$400** is a reasonable hourly rate for a civil litigator of Attorney Whiteman's experience."); Grabarczyk v. Stein, No. 5:19-CV-48-BO, 2021 WL 308600, at *3 (E.D.N.C. Jan. 29, 2021) ("[F]actors support the time expended at the attorney rate of **$400 per hour**."); Atl. Coast Pipeline, LLC v. 0.47 Acres, More or Less, in Halifax Cty., N. Carolina, No. 4:18-CV-36-BO, 2020 WL 7439835, at *4 (E.D.N.C. Dec. 18, 2020) ("[A]ttorney Lolar generally charges $600 per hour for attorney work . . . [but] the Court determines that the rate of **$250 per hour** for attorney time and **$95 per hour** for legal assistant time . . . is reasonable); Gravelle v. Kaba Ilco Corp., No. 5:13-CV-642-FL, 2019 WL 7584527, at *3 (E.D.N.C. Aug. 8, 2019) (finding "a rate of **$350.00 per hour** for all hours expended is supported by the weight of the evidence"); Norton v. High, No. 7:18-CV-45-FL, 2019 WL 3753206, at *3 (E.D.N.C. Aug. 8, 2019) ("[A] rate of **$300.00 per hour** for all hours expended is supported by the weight of the evidence."); Lorenzo v. Prime Commc'ns, L.P., No. 5:12-CV-69-H-KS, 2018 WL 10689708, at *6 (E.D.N.C. Sept. 28, 2018) (relying upon declaration

providing "a customary fee for services for experienced counsel in a case like this is at minimum **$425 to $475 per hour,** and for services by associates with one to three years' experience **$225 to $275,** and for paralegals **$100 to $125** per hour"); Mateo-Evangelio v. Triple J Produce, Inc., No. 7:14-CV-302-FL, 2018 WL 1702772, at *5 (E.D.N.C. Apr. 6, 2018) (finding a rate of **$400 per hour** for all hours expended is "supported by the weight of the evidence," but $425 not supported).

These cases suggest a rough average of about $375 per hour for a partner, and a reasonable rate of $225 per hour for an associate, and about $100 per hour for a paralegal, as the prevailing market rate for corporate civil litigation in this district. The court recognizes that comparison to prior cases is an imperfect measure, but this is the data that the court must turn to in the absence of evidence provided by defendant in support of its motion. Moreover, in many of the cases cited above, counsel in fact did provide evidence in the form of affidavits as to prevailing market rates, justifying the rates requested. Accordingly, the court places great weight on ranges discussed in these cases, as a ceiling. The court places some weight on the actual rates charged in the billing records in this case, especially where rates are within or below the ranges discussed in the cases, but the court significantly adjusts rates in other instances based upon the lack of additional evidence provided by defendant.

In sum, considering the foregoing, the court finds reasonable hourly rates, for purposes of the instant motion, to be $375 for Sasser, $288 for Segars, $220 for Kirby and Crabtree, and $100 for Kaufman and McFall. The adjusted hourly rates and totals, thus, are as follows:

|  | Hours | Rate | Total |
|---|---|---|---|
| Jonathan D. Sasser (Partner) | 409.2 | $375 | $153,450.00 |
| Thomas H. Segars (Partner) | 21.7 | $288 | $6,249.60 |

|  | Hours | Rate | Total |
|---|---|---|---|
| Cameron T. Kirby (Associate) | 30.6 | $220 | $6,732.00 |
| Cameron T. Kirby (Associate) | 15.3 | $220 | $3,366.00 |
| Taylor H. Crabtree (Associate) | 47.4 | $220 | $10,428 |
| Sarah H. Kaufman (Paralegal) | 40.3 | $100 | $4,030 |
| Melany D. McFall (Paralegal) | .2 | $100 | $20.00 |
| Professional expenses: (Westlaw, Delivery, Exhibits, Travel) |  |  | $1643.86 |
| Total | 564.7 |  | $184,275.60 |

In sum, the number of hours expended and the hourly rates, as specified in the table above, are reasonable, producing a lodestar amount of $184,275.60. No other factors warrant adjustment to this amount, under the circumstances of this case. See Krear, 810 F.2d at 1263. Accordingly, defendant's motion is granted in this part, and the court will direct the clerk to enter judgment in favor of defendant in this amount, comprising an award of reasonable attorneys' fees.

## CONCLUSION

Based on the foregoing, defendant's motion for attorneys' fees (DE 250) is GRANTED IN PART on the terms set forth herein. The clerk is DIRECTED to enter judgment in favor of defendant in the amount of $184,275.60, comprising an award of reasonable attorneys' fees. That part of the motion (DE 250) that seeks an award of costs is DENIED AS MOOT, in light of the clerk's separate award of costs.

SO ORDERED, this the 10th day of May, 2021.

_____
LOUISE W. FLANAGAN
United States District Judge