IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CV-133-FL

| TIMOTHY CAPPS, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | ORDER |
| NEWMARK SOUTHERN REGION, LLC, and NEWMARK & COMPANY REAL ESTATE, INC. | ) |  |
| Defendant. | ) |  |

This matter is before the court on plaintiff's motion for attorneys' fees and costs (DE 270) and motion for hearing (DE 275). The issues raised are ripe for ruling. For the following reasons, the motions are denied.

### STATEMENT OF THE CASE

The court sets forth the procedural history of this case as pertinent to the instant motions, which follow the opinion and judgment of the United States Court of Appeals for the Fourth Circuit, vacating this court's judgment and remanding with instructions to dismiss the matter without prejudice for lack of subject matter jurisdiction. See Capps. v. Newmark S. Region, LLC, 53 F.4th 299 (4th Cir. 2022).

Plaintiff, a former independent contractor of defendant Newmark Southern Region, LLC ("Newmark"), commenced this action on March 29, 2018, asserting state-law claims, including breach of contract, based upon allegations that defendant Newmark improperly terminated its relationship with plaintiff. With respect to jurisdiction, plaintiff alleged, "[u]pon information and

belief," that defendant Newmark "is a limited liability company incorporated in Georgia with its principal place of business at 3424 Peachtree Road, Atlanta, Georgia," and that it and defendant Newmark & Company Real Estate, Inc. "are wholly owned subsidiaries of BGC Partners, Inc., a major global financial services and real estate brokerage firm." (Compl. ¶¶ 14, 17). In addition, plaintiff asserted, "[t]his Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between [plaintiff] and the Defendants." (Compl. ¶ 18).

In the introductory paragraphs of his complaint, plaintiff also asserted that the instant case was "necessarily related to – and arises out of the same facts that form the basis for" a separate lawsuit commenced December 22, 2017, between plaintiff and his former business "partner," Gregory Katz ("Katz"), (compl. ¶¶ 1-2), captioned <u>Gregory Katz v. Timothy Capps and Kacie Van Hine</u>, Case No. 7:18-CV-47-FL (E.D.N.C.) (the "Katz action").[1] In the Katz action, Katz asserted state-law claims and one claim under the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and plaintiff counterclaimed.

Defendants filed financial disclosure reports, prior to the deadline for responsive pleadings, identifying, as pertinent to the instant analysis, defendant Newmark's parent as NGA, LLC; grandparent as Newmark Partners, L.P.; and great-grandparents as Newmark Holdings, L.P. ("Newmark Holdings L.P.") and Newmark Group., Inc. (DE 14). Defendants also moved to dismiss all claims against them for failure to state a claim upon which relief can be granted, and the court dismissed all of plaintiff's claims except for breach of contract against defendant Newmark, November 26, 2018.[2] Defendant Newmark filed an answer to the complaint December

---

[1] The Katz action originally was commenced in the United States District Court for the Northern District of Georgia, then transferred to this court upon motion by plaintiff on March 22, 2018.

[2] Several days after the motion to dismiss was filed, at the direction of the court, the instant case was reassigned

10, 2018, which admitted plaintiff's allegations regarding defendant Newmark's identity, but which denied plaintiff's allegations regarding its owners. Defendant Newmark also admitted "for jurisdictional purposes only" plaintiff's allegations regarding diversity jurisdiction. (Answer (DE 57) ¶ 18).

In the meantime, the court consolidated the instant case with the Katz action and entered a case management order governing discovery before and after resolution of the motion to dismiss. During the discovery period, the parties to the Katz action stipulated to dismissal of their claims against one another, and plaintiff and defendant Newmark proceeded to bench trial on their breach of contract claims. In advance of the trial, the parties filed a proposed pretrial order and proposed stipulated findings of fact and conclusions of law, as pertinent here, that stated "[a]ll parties are properly before the court," and "[t]he court has jurisdiction of the parties and of the subject matter." (DE 202 at 1; DE 219 at 21). In addition, the parties stipulated to their identities as follows: 1) plaintiff is "a citizen and resident of Wake County, North Carolina," and 2) defendant Newmark is "a Georgia limited liability company with a principal place of business in Atlanta, Georgia." (DE 219 at 1; DE 222 at 1). Following bench trial, the court entered findings of fact and conclusions of law, which included those stipulated facts, and entered judgment in favor of defendant.

Plaintiff appealed, raising arguments on the merits of this court's judgment. In the jurisdictional statement of his opening brief, plaintiff stated "[t]he district court had jurisdiction over this matter under 28 U.S.C. § 1332 because there was complete diversity." (No. 21-1196 Doc. 36 at 17).

to the undersigned district judge from the district judge originally assigned.

During the course of oral argument, on September 16, 2022, panel members had the following exchange with plaintiff's counsel:

> Q. As a district court judge myself, switching gears here, to another issue, the first concern I've got here is subject matter jurisdiction, and the information before us does not allow us to confirm the existence of diversity jurisdiction. Can you give us some more information to establish the citizenship of the parties, before we get into too many other issues?
>
> A. That's fine, your honor, at the beginning there were numerous other parties that were involved, some of them dismissed. Frankly, I believe Newmark might be an LLC, or maybe they were at the time of this case, and I understand, that would determine where its members lived, and unfortunately I don't know that information, and it wasn't contested below, and so –
>
> Q. You didn't allege it right, you alleged that the principal place of business was in Georgia, which would be helpful if they were a corporation, but that doesn't matter for an LLC, right?
>
> A. That's right, you need to look at the location of the members and unfortunately I don't have that information.
>
> Q. We don't know where the citizenship of Newmark Southern Region LLC is?
>
> A. I do not, your honor. Once again, it wouldn't be based upon principal place of business, it would be based on the location of the members. My assumption is that one of the members was a wholly owned subsidiary of the other, but that is merely an assumption, on my part.
>
> Q. Well who are the members of Newmark, don't know that?
>
> A. Again, your honor, I'm sorry, I have to defer to Newmark's counsel for that information.

(Oral Argument 6:30-8:02).[3] Then, later in oral argument, panel members had the following exchange with defendant Newmark's counsel:

> Q. If you don't mind starting with Judge Hendricks's question, about the LLC and its members and their citizenship?

---

[3] A recording of the oral argument is available on the Fourth Circuit website. (See https://www.ca4.uscourts.gov/OAarchive/mp3/21-1196-20220916 mp3).

4

> A. Absolutely not. The LLC that is the appellee, which is Newmark Southern Region, is not a citizen of North Carolina. Its members are corporate entities venued in Delaware and New York, and so there never has been an issue about diversity of citizenship among the parties.
>
> Q. Would you be so kind as to help us be sure of that by submitting a letter of the members of the LLC and information about their citizenship?
>
> A. Absolutely.

(Oral Argument 18:05-18:45).

The court of appeals also entered a written order on the day of argument directing defendant Newmark to submit a letter pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure "regarding the membership of Newmark Southern Region, LLC and their citizenship." (No. 21-1196 Doc. 65). Defendant Newmark responded by letter to the Fourth Circuit on September 20, 2022, identifying the entities that were set forth in its financial disclosure statement, and, for the first time, noting that the limited partners of Newmark Holdings, L.P. resided in multiple states, including North Carolina. Four days later, plaintiff moved for an order vacating the judgment and remanding the case for dismissal without prejudice. In opposition, defendant Newmark argued that this court had "supplemental jurisdiction" over the claims in the instant case, that jurisdictional defects prior to consolidation are moot, and that plaintiff has been aware for years of his basis for challenging diversity jurisdiction. (No. 21-1196 Doc.71-1 at 2). In reply, plaintiff argued consolidation and supplemental jurisdiction cannot cure jurisdictional defects, and that the "[b]lame [l]ies" with defendant Newmark. (Id. Doc. 72 at 12).

In its November 16, 2022, opinion vacating this court's judgment and remanding, the Fourth Circuit noted that the parties "agree that complete diversity did not exist between them at the time of filing, given the North Carolina citizenship of at least one limited partner of Newmark Holdings, L.P.—a great-grandparent entity to Newmark." Capps, 53 F.4th at 302. "Consequently, the district court lacked subject-matter jurisdiction over Capps's claims against Newmark pre-

5

consolidation, so it lacked the power to consolidate the lawsuits in the first place," and "consolidation could not cure the defect." Id. The Fourth Circuit also addressed defendant Newmark's additional argument that the court should forgive the jurisdictional defect. Id. at 303. In closing, the Fourth Circuit noted "[n]either side of this dispute lacked the means to ascertain Newmark's citizenship at any point." Id. "Whether mutual contentment with the federal forum or genuine obliviousness brought the parties to this unfortunate juncture, this Court will not condone the exercise of jurisdiction where it did not truly exist." Id.

Following remand and this court's entry of judgment dismissing the case without prejudice for lack of subject matter jurisdiction, plaintiff filed the instant motion for attorney fees and costs. Plaintiff seeks attorneys' fees and costs in the amount of $1,982,627.41, pursuant to 28 U.S.C. § 1927 or this court's inherent authority. In the alternative, plaintiff seeks just costs in the amount of $43,860.28 under 28 U.S.C. § 1919. Plaintiff relies upon: 1) certain filings made on appeal, 2) case-opening documents in a new lawsuit filed by Newmark against plaintiff in New York Supreme Court, 3) declaration of Matthew Nis Leerberg, plaintiff's counsel, and 4) declaration of Mark Sigmon, an attorney practicing law in North Carolina.

Defendant Newmark responded in opposition, relying upon 1) a declaration of David A. Paul ("Paul"), assistant general counsel for Cantor Fitzgerald Securities and provider of legal services to defendant Newmark; 2) a February 23, 2018, email sent to plaintiff from "Partnership_Administration@bcgpartners.com," 3) Schedule K-1 tax forms for Newmark Holdings, L.P., 4) discovery requests and responses between the parties in the instant case and the Katz action, and 5) plaintiff's opening brief on appeal. Plaintiff replied and then filed the instant motion for hearing.

# COURT'S DISCUSSION

Defendant Newmark argues that an award of attorneys' fees and costs under § 1927 and the court's inherent authority is not appropriate where Newmark did not act in bad faith, and that an award of costs under § 1919 would be premature and inequitable. The court agrees.

A.  28 U.S.C. § 1927 and the Court's Inherent Authority

Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "Bad faith on the part of the attorney is a precondition to imposing fees under § 1927." E.E.O.C. v. Great Steaks, Inc., 667 F.3d 510, 522 (4th Cir. 2012).

Likewise, it is within "the inherent power of courts to assess attorneys' fees" when a "party has acted in bad faith" or when a "counsel's conduct in [a] case constituted or was tantamount to bad faith." Roadway Exp., Inc. v. Piper, 447 U.S. 752, 767 (1980). "[N]arrow exceptions to the American Rule effectively limit a court's inherent power to impose attorney's fees as a sanction to cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders." Chambers v. NASCO, Inc., 501 U.S. 32, 47 (1991).

A party may "show[] bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order," or the court may assess attorney's fees under its inherent authority "if a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled." Id. at 46. This standard is in contrast to "many of the other mechanisms [that] permit a court to impose attorney's fees as a sanction for conduct which merely fails to meet a reasonableness standard." Id. at 47. "Rule 11, for example, imposes an objective standard of reasonable inquiry which does not mandate a finding of bad faith." Id.

7

To justify an award of attorneys' fees under § 1927 or the court's inherent powers, conduct of an attorney or a litigant must "demonstrate a level of egregiousness, a pattern of misconduct, or result in protracted litigation to the extent that [the Fourth Circuit] and others have found bad faith that warranted sanctions." Harvey v. Cable News Network, Inc., 48 F.4th 257, 280 (4th Cir. 2022). "[U]nder its inherent powers, the district court has authority to shift attorneys fees . . . only in the extraordinary circumstances where bad faith or abuse can form a basis for doing so." Hensley v. Alcon Lab'ys, Inc., 277 F.3d 535, 543 (4th Cir. 2002). For example, the Fourth Circuit has upheld sanctions under § 1927 where the district court made a "correct finding of subjective bad faith." Blair v. Shenandoah Women's Ctr., Inc., 757 F.2d 1435, 1438 (4th Cir. 1985).

Under either basis, "[l]ike other sanctions, attorney's fees certainly should not be assessed lightly." Roadway Exp., 447 U.S. at 767. "A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." Chambers, 501 U.S. at 50.

Plaintiff has not demonstrated bad faith under the foregoing standard, due to a combination of factors and circumstances in this case. The court begins with the determination by the Fourth Circuit that "[n]either side of this dispute lacked the means to ascertain Newmark's citizenship at any point." Capps, 53 F.4th at 303. This determination highlights the role that plaintiff played in alleging and investigating diversity jurisdiction at important junctures in the case. While defendant Newmark bears responsibility for incorrectly admitting diversity jurisdiction when none existed, a finding of bad faith is precluded by plaintiff's own course of litigation. Plaintiff himself commenced this suit by alleging, without qualification, that "there is complete diversity of citizenship between Capps and the Defendants." (Compl. (DE 1) ¶ 18). After defendant Newmark correctly disclosed multiple layers of parent limited liability companies in its financial disclosure

8

form, plaintiff did not take any jurisdictional discovery. Plaintiff also did not alter his description of defendant Newmark or his allegation of jurisdiction upon filing amended complaint in May 2020, or upon submitting proposed findings of fact and conclusions of law to the court before bench trial. (See Am. Compl. (DE 180) ¶¶ 11-12; Proposed Pretrial Order (DE 202) at 1; Proposed Findings (DE 219) at 21). Thus, as one Fourth Circuit panel member pointed out at oral argument, plaintiff "didn't allege it right, [plaintiff] alleged that the principal place of business was in Georgia, which would be helpful if they were a corporation, but that doesn't matter for an LLC." (Oral Argument at 7:18-7:26). Counsel for plaintiff conceded that error, noting it was necessary "to look at the location of the members." (Id. at 7:28-7:30). In other words, plaintiff did not make factual allegations that were relevant to jurisdiction, despite his unqualified assertion that there was complete diversity of citizenship.

The court also considers the suggestion by the Fourth Circuit that "mutual contentment with the federal forum or genuine obliviousness brought the parties to this unfortunate juncture." Capps, 53 F.4th at 303. Neither scenario falls within the ambit of bad faith, and the Fourth Circuit did not otherwise suggest that defendant Newmark acted in bad faith. Moreover, the Fourth Circuit made such observations without benefit of the additional information provided by defendant Newmark post-appeal, regarding plaintiff's own prior status as a North Carolina member of Newmark Holdings, L.P., one of the great-grandparent entities of defendant Newmark. While plaintiff asserted in his reply brief in support of dismissal before the Fourth Circuit that he "was not a partner in Newmark Holdings, L.P.," and that defendant Newmark was relying upon "baseless guesswork," (Pl's Reply, Case No. 21-1196 Doc. 72 at 12), this is not accurate where defendant Newmark has contemporaneous evidence of plaintiff's prior membership in Newmark Holdings, L.P. (See, e.g., DE 273-1 at 17 (February 23, 2018, email to plaintiff, noting "[u]pon

9

the Separation, you became a partner in a newly formed partnership, Newmark Holdings, L.P."); DE 273-2 at 2 (tax statement showing plaintiff's share in Newmark Holdings L.P, for period ending December 31, 2017)).

In addition to the observations by the Fourth Circuit in its opinion, the court takes into account other facts and circumstances in this case that preclude a determination of bad faith. The court considers the nature and circumstances of the error made by defendant Newmark in admitting diversity jurisdiction in answers to the complaint and to the amended complaint. According to the Paul declaration, "[w]hen Newmark submitted its Answer, it inadvertently did not realize that the residence of individual partners in great grandparent Newmark Holdings, L.P. could impact Newmark's citizenship for purposes of diversity jurisdiction." (Paul Decl. (DE 273) ¶ 2). Plaintiff has not identified any evidence calling into question the veracity of this statement. Under the circumstances of this case, such an inadvertent failure to realize the impact of residency of individual partners in a great grandparent holding company is not indicative of bad faith.

In reaching this conclusion, the court is mindful that it is a well-settled legal rule that "the citizenship of a limited liability company . . . is determined by the citizenship of all of its members." Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011). Nevertheless, the court also recognizes that "[t]he citizenship-of-its-members rule sometimes turns subject matter jurisdiction into a tedious exercise in drafting organizational charts: members of an unincorporated association may themselves be unincorporated associations, requiring courts and litigants to trace citizenship through multiple layers of ownership." Hawkins v. i-TV Digitalis Tavkozlesi zrt., 935 F.3d 211, 223 (4th Cir. 2019). Further, the difference in jurisdictional treatment between "traditional corporations" and "unincorporated associations" may lead to "results sometimes seem[ing] arbitrary." Id. The instant case provides one such example,

where tracing citizenship to a great-grandparent layer of ownership, with some entities as corporations and others as partnerships, is "tedious." Id. While this does not lessen the seriousness of the mistake made by defendant Newmark, which had all the information and legal precedent it needed to make a jurisdictional determination, it does lend credibility to the assertion in the Paul declaration that it "inadvertently did not realize" the significance of residency of individual partners in Newmark Holdings, L.P. (Paul Decl. (DE 273) ¶ 2).

The court also takes into account that defendant Newmark did not engage in other conduct in this litigation that could establish a pattern of conduct supporting a finding of bad faith, and defendant Newmark was fully engaged in litigation, responsive to discovery requests by plaintiff, and compliant with orders of the court. Absent from this case are indicia of bad faith, such as conduct "delaying or disrupting the litigation or . . . hampering enforcement of a court order," nor has the court found "that fraud has been practiced upon it, or that the very temple of justice has been defiled." Chambers, 501 U.S. at 46-47. There is not a "level of egregiousness, a pattern of misconduct, or . . . protracted litigation to the extent that [the Fourth Circuit] and others have found bad faith that warranted sanctions." Harvey, 48 F.4th at 280. Accordingly, defendant Newmark's errors in this case did not rise to the level of bad faith justifying attorney's fees and costs under § 1927 and the court's inherent powers.

In addition, and in the alternative, defendant Newmark did not "so multipl[y] the proceedings . . . vexatiously" by its conduct, or act "wantonly, or for oppressive reasons," to meet the requirements of those sanctions. 28 U.S.C. § 1927; Chambers, 501 U.S. at 45-46. While the admissions in its answers allowed jurisdictional issues to escape unnoticed until oral argument on appeal, defendant Newmark disclosed properly its ownership in its financial disclosure forms and it did not resist discovery or obstruct inquiry into jurisdiction at any point. In this context, making

11

erroneous admissions of diversity jurisdiction in its answers does not constitute multiplication of the proceedings vexatiously.

Plaintiff's arguments to the contrary are unavailing, and the cases he cites are inapposite. For instance, plaintiff argues that "[c]ounsel has an 'affirmative duty . . . to conduct a reasonable inquiry into the validity of a pleading before it is signed," quoting Cleveland Demolition Co. v. Azcon Scrap Corp., a Div. of Gold Fields Am. Indus., 827 F.2d 984, 988 (4th Cir. 1987) (Pl's Mem. (DE 271) at 4). This argument and citation misses the mark for several reasons. As an initial matter, nothing in Cleveland Demolition states that the quoted rule is determinative of an award of attorney's fees and costs under § 1927 and the inherent powers of the court. Indeed, the court expressly identifies the quoted standard to be based on Federal Rule of Civil Procedure 11. See id. In addition, Cleveland Demolition noted that the 1972 amendments to Rule 11 "eliminated the subjective 'good faith' harbor and require[d] an attorney to conduct an objectively reasonable investigation." Id. at 987 (emphasis added). In other words, an attorney who acts in good faith can nonetheless be subject to Rule 11 sanctions; however, the same cannot be said for sanctions under § 1972 or the inherent powers of the court, which sanctions require bad faith. Thus, the rule stated in Cleveland Demolition is inapposite.

Moreover, Cleveland Demolition is distinguishable, because the sanctioned litigant in that case accused the opposing litigant of committing perjury at trial, and alleged that the opposing litigant's attorney "conspired with [the officer] to present this perjured testimony," without any evidence to support the allegation. Id. at 985. The nature of the sanctioned conduct, thus, was categorically different from the nature of the alleged conduct in the instant case, where it involved an unfounded moral attack on an opposing litigant and his attorney.

Plaintiff also relies upon Agnew v. United Leasing Corp., 680 F. App'x 149, 154 (4th Cir. 2017), where the court upheld an award of attorney's fees under § 1927. Agnew, however, is instructively distinguishable because the sanctions there were based on the district court's finding that filings made by the sanctioned party "appear to constitute intentional misrepresentation or attempted deception." 680 Fed. Appx. at 154. The court is unable to find based on the record in the instant case that defendant Newmark made filings that appear to constitute intentional misrepresentation or attempted deception.

Remaining cases cited by plaintiff to support application of a more relaxed standard than that articulated herein are either inapposite or instructively distinguishable. For example, plaintiff cites to In re Walker, 532 F.3d 1304, 1310 (11th Cir. 2008) for the proposition that "bad faith . . . exists when an attorney fails to investigate before making a material representation," and that "[a]sserting a fact without conducting even a 'minimal investigation' can support a finding of bad faith." (Pl's Mem. (DE 271) at 5). Plaintiff, however, quotes Walker out of context. There, the court held that "[t]he seriousness of the allegations combined with the lack of any evidentiary support or minimal investigation support a finding of bad faith." Walker, 532 F.3d at 1310 (emphasis added). In this respect, Walker also is distinguishable where the sanctioned party in that case "alleged that an opposing litigant had made false representations to the court, committed fraud against the court, and planned to benefit personally at the expense of the creditors," which "accusations required multiple hearings." Id. By contrast, defendant Newmark made no such "scandalous accusations," id., in conjunction with a lack of minimal investigation.

Plaintiff also cites Gulisano v. Burlington, Inc., 34 F.4th 935, 944 (11th Cir. 2022) for the proposition that "a position recklessly asserted counts as bad faith." (Pl's Mem. (DE 271) at 5). Gulisano, however, arose in the context of Rule 11, where the court observed that "the court must

13

impose sanctions <u>despite the attorney's good faith belief</u> that the claims were sound," if "the attorney failed to make a reasonable inquiry," 34 F.4th at 942 (emphasis added), which is in conflict with the "bad faith" standard for sanctions under § 1927 and the court's inherent authority. <u>Harvey</u>, 48 F.4th at 280; <u>Blair</u>, 757 F.2d at 1438.[4]

In any event, <u>Gulisano</u> is distinguishable, where the court determined that the plaintiff's arguments in support of a motion to amend "were legally and factually frivolous," and the plaintiff was informed of the countervailing facts from the opposing party in a response to the motion to amend. 34 F.4th at 944. Here, defendant Newmark was not informed of countervailing facts in any opposition by plaintiff; to the contrary, plaintiff persisted in asserting that the parties were in agreement about diversity jurisdiction up through his opening brief on appeal. Accordingly, a finding of bad faith, even under the standard articulated by the Eleventh Circuit in <u>Gulisano</u>, is not warranted.

In the same vein, plaintiff seeks to compare the instant case to two cases in which sanctions were awarded for failure to investigate jurisdictional facts: <u>Bovinett v. HomeAdvisor, Inc.</u>, No. 20-3221, 2022 WL 1056086, at *2 (7th Cir. Apr. 8, 2022), and <u>Nat'l Loan Invs., L.P. v. W. Sugar Co.</u>, 366 F. Supp. 2d 881, 885 (D. Neb. 2005). Both cases are unhelpful, however, because they apply a Rule 11 standard to conduct by a plaintiff in initiating a lawsuit. In addition, they are instructively distinguishable. In <u>Bovinett</u>, the plaintiff "persisted in suing [a party] <u>after</u> [that party] furnished evidence showing no relevant ties to Illinois" that would support personal jurisdiction. 2022 WL 1056086 at *2 (emphasis added). In <u>National Loan</u>, the plaintiff "refuse[d]

---

[4] In contrast with the Fourth Circuit, the Eleventh Circuit has expressed uncertainty regarding whether the bad faith required for sanctions under § 1927 "is subjective or objective." <u>Smith v. Grand Bank & Tr. of Fla.</u>, 193 F. App'x 833, 836 (11th Cir. 2006); <u>see</u> <u>Cordoba v. Dillard's, Inc.</u>, 419 F.3d 1169, 1178 (11th Cir. 2005) (noting "[o]ur cases are perhaps somewhat unclear on this point."); cf. <u>Blair</u>, 757 F.2d at 1438 (holding that the district court made a "correct finding of <u>subjective</u> bad faith").

14

to disclose" the identity of limited partners, in response to the defendant's "discovery requests." 366 F. Supp. 2d at 884. Defendant Newmark engaged in no such obstructive conduct here.

Plaintiff argues that "only Newmark could have known the locations of its members," where this was not publicly available information, and he suggests that he did all he could do by pleading "diversity of citizenship as a general matter in [his] complaint." (Pl's Mem. (DE 271) at 6). This argument, however, is a red herring. The court's determination herein does not depend upon plaintiff's knowledge of the jurisdictional facts. Rather, the court's determination is based in part on the recognition that plaintiff played a role in the court's mistaken exercise of jurisdiction by bringing suit in this court in the first place, based upon an unequivocal allegation of diversity jurisdiction, and by not questioning that diversity jurisdiction. Moreover, this is not a case where plaintiff was an outsider to the defendant, but rather plaintiff himself previously was a North Carolina member of Newmark Holdings L.P., which was identified in defendant Newmark's initial financial disclosure statement. Regardless of what plaintiff knew at the time of commencement of suit, the foregoing facts, in light of the totality of the circumstances in this case, preclude a determination of bad faith on the part of defendant Newmark.

Plaintiff also faults defendant Newmark for failing to locate the membership of its members earlier, when it did so upon prompting by the Fourth Circuit "within days." (Pl's Mem. (DE 271) at 6). This argument, however, does not address the legal and procedural components of the diversity jurisdiction analysis, where defendant has averred that "[w]hen Newmark submitted its Answer, it inadvertently <u>did not realize</u> that the residence of individual partners in great grandparent Newmark Holdings, L.P. <u>could impact Newmark's citizenship for purposes of diversity jurisdiction</u>." (Paul Decl. (DE 273) ¶ 2) (emphasis added). Defendant Newmark does not suggest that identifying the residences of individual partners in Newmark Holdings, L.P., was

15

difficult; rather, it contends that it did not realize the impact of that residency on the diversity jurisdiction calculation in the instant case. In other words, the record reflects an oversight of legal analysis and procedures, albeit a serious one, in determining the existence of diversity jurisdiction.[5] The court finds no basis for characterizing such an oversight as bad faith conduct justifying an award of attorneys' fees and costs under § 1927 and the court's inherent powers.

Finally, plaintiff faults defendant Newmark for the arguments it made in opposing dismissal by the Fourth Circuit. However, the Fourth Circuit did not characterize defendant Newmark's arguments as ones made in bad faith, nor did it describe the arguments as frivolous, specious, or without any rational basis in fact or law. Indeed, the arguments raised by defendant Newmark were the only ones addressed in the Fourth Circuit's published opinion, where the parties already had "conceded lack of complete diversity." Capps, 53 F.4th at 302. Moreover, the court recognized the logical basis for defendant Newmark's argument based on "finality, efficiency, and economy," noting "[t]o be sure, vacatur and remand for dismissal now could burden the parties and squander juridical resources already expended." Id. at 303. Thus, defendant Newmark's conduct on appeal does not support a determination of bad faith.

In sum, plaintiff has not demonstrated "a level of egregiousness, a pattern of misconduct, or result in protracted litigation to the extent that [the Fourth Circuit] and others have found bad faith that warranted sanctions." Harvey, 48 F.4th at 280. Nor has plaintiff demonstrated defendant Newmark "so multiplie[d] the proceedings in [this] case unreasonably and vexatiously." 28 U.S.C.

---

[5] The response by defendant Newmark's counsel to questioning at oral argument further reinforces the determination that, prior to oral argument, defendant Newmark inadvertently did not realize that the residence of individual partners in great grandparent Newmark Holdings, L.P. could impact Newmark's citizenship for purposes of diversity jurisdiction. Counsel stated, for example, "[t]he LLC that is the appellee, which is Newmark Southern Region, is not a citizen of North Carolina; its members are corporate entities venued in Delaware and New York, and so there never has been an issue about diversity of citizenship among the parties." (Oral Argument 18:14-18:28) (emphasis added).

§ 1927. Therefore, an award of attorneys' fees and costs under § 1927 and the court's inherent powers is not warranted.

B.     Costs under 28 U.S.C. § 1919

"Whenever any action or suit is dismissed in any district court . . . for want of jurisdiction, such court may order the payment of just costs." 28 U.S.C. § 1919. The Fourth Circuit has not provided guidance on what constitutes "just costs" for purposes of this provision, but a three judge panel in Common Cause v. Rucho, No. 1:16-CV-1026, 2020 WL 13303323 (M.D.N.C. Apr. 17, 2020) (JJ. Wynn, Osteen, and Britt), considered the framework articulated by the Ninth Circuit in Otay Land Co. v. United Enterprises Ltd., 672 F.3d 1152 (9th Cir. 2012).

In Otay the court opined that "[i]n determining 'just costs' under 28 U.S.C. § 1919, a district court should consider what is most fair and equitable under the totality of the circumstances." Id. at 1157. "An emphasis on a 'case-by-case approach' based on 'the circumstances and equities of each case' is in keeping with a court's discretion to award costs, 'a practice long recognized in equity.'" Id. (quoting 10 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, & Richard L. Marcus, Federal Practice and Procedure § 2668, at 230–31 (3d ed. 1998)). "Although 'just costs' is a unitary standard, it involves a two step analysis—whether an award of costs is just and equitable and, if so, the appropriate amount of costs." Id.

"[C]onsiderations that could be factored into such a decision" include: 1) "the role played by exigent circumstances, such as hardship or culpable behavior by the parties," 2) "the overall reasonableness of [a party's] jurisdictional claim and . . . the fact that [an opposing party] did not move for summary judgment on the basis of jurisdiction," and 3) "the significance of pending parallel litigation in state court." Id. at 1157-1159.

17

Here, considering the totality of the circumstances, an award of costs under § 1919 is not appropriate. While defendant Newmark is at fault for admitting diversity jurisdiction when none was present, this admission was not in bad faith for the reasons set forth herein, and plaintiff chose to commence suit in this federal court, and continued through appellate argument, without questioning the existence of diversity jurisdiction. Plaintiff also has not alleged hardship resulting from payment of costs. With respect to the reasonableness of the jurisdictional claim, the lack of diversity jurisdiction never was the basis of any motion in the district court, and the issue remained unexamined by the parties and this court. Plaintiff's own allegation of defendant Newmark's principal place of business in Atlanta, Georgia, masked a more complex underlying jurisdictional analysis.

Finally, and most significantly, litigation is ongoing in New York state court, where defendant Newmark has refiled its dismissed state law claim, and where plaintiff may reassert his own dismissed state law claims. Accordingly, this case stands in contrast to Otay, where the plaintiff could "not refile its two dismissed federal claims in state court," and where the court found this factor non-determinative. 672 F.3d at 1159. Instead, this case is more aligned with Callicrate v. Farmland Indus., Inc., 139 F.3d 1336 (10th Cir.1998), where the Tenth Circuit concluded that because the merits of the case remained in active litigation between the parties in state court, an award of costs under § 1919 was "speculative and premature." Id. at 1342.

Plaintiff cites to Vaughan v. McArthur Bros. Co., 227 F. 364 (8th Cir. 1915), where the court upheld an award of costs to a defendant in a case improperly removed from state court to federal court, on the basis that "the plaintiffs presumptively knew all the time that [an individual] plaintiff was a citizen of Illinois." Id. at 368. Vaughan, however, highlights the case-by-case nature of the costs analysis. There, the plaintiffs were two individual partners in a partnership,

who commenced suit in state court. The defendant removed on the basis of diversity of citizenship. After "nearly eight years," plaintiffs moved to remand on the basis of lack of diversity because one of the plaintiffs and the defendant were both citizens of Illinois, and the plaintiffs sought an award of costs in their favor. Vaughn is inapposite because the party taxed with costs and presumed to know his own citizenship was an individual, whose citizenship is much more simple than a limited liability company with great grandparent members. Moreover, the plaintiffs had protracted the litigation, and had sought to have the defendants pay all costs which had "been made wholly useless by [plaintiffs' own] motion to remand." Id. at 368. The balance of the equities in the instant case thus is not equivalent to that in Vaughn.

Accordingly, upon consideration of the totality of the circumstances, an award of costs under § 1919 is not appropriate.

C.  Motion for Hearing

The court dispenses with hearing because the facts and legal contentions are adequately presented in the materials before this court and hearing would not aid the decisional process.

## CONCLUSION

Based on the foregoing, plaintiff's motion for attorneys' fees and costs (DE 270) and motion for hearing (DE 275) are DENIED.

SO ORDERED, this the 25th day of April, 2023.

_____
LOUISE W. FLANAGAN
United States District Judge